**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

GARY BLAKES,

      Plaintiff,

          v.                             Civil Action No. 10-CV-3585 AW

CITY OF HYATTSVILLE *et al.*,

      Defendants.

---

**MEMORANDUM OPINION**

Plaintiff Gary Blakes brings this action against the following Defendants: (1) City of Hyattsville; (2) Elaine Murphy; and (3) Douglas K. Holland. Plaintiff asserts claims for racial discrimination, hostile work environment, retaliation, and wrongful discharge. Pending before the Court are the following Motions: (1) Defendants' Motion for Summary Judgment; and (2) Plaintiff's Cross-Motion for Summary Judgment. The Court has reviewed the entire record and deems no hearing necessary. For the reasons articulated herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a former police officer for the City of Hyattsville. Defendant City of Hyattsville is a city in Prince George's County, Maryland. Defendant Elaine Murphy formerly served as City Administrator for Hyattsville. Defendant Douglas K. Holland is the current Chief of Police of the Hyattsville City Police Department (Department).

Plaintiff started working for the Department in 1991. In February 2008, after a series of promotions, Plaintiff reached the rank of lieutenant.

In April 22, 2010, Plaintiff resigned from the Department. Plaintiff contends that he was constructively discharged. On July 12, 2010, Plaintiff filed a charge of discrimination with the EEOC. On September 29, 2010, the EEOC dismissed Plaintiff's charge for procedural reasons.

Approximately two months later, Plaintiff filed a Complaint. Doc. No. 1. The Complaint contains six Counts. Counts (1) through (3) assert Title VII claims for, respectively, racial discrimination, hostile work environment (i.e., racial harassment), and retaliation. Count (4) asserts a First Amendment retaliation claim. Counts (5) and (6) assert state claim claims; Count (5) is for wrongful discharge and Count (6) is for racial discrimination. The Complaint contains a series of allegations that purport to show that Plaintiff was discriminated against, and that the discrimination was so intolerable that he was forced to resign.

By and large, Plaintiff founds his claims on two investigations that the Department conducted of him. In one instance, in the fall of 2009, allegations surfaced that Plaintiff might have helped an officer cheat on a promotional exam. In response to a March 6, 2009 internal memo detailing the allegations of cheating, Chief Holland asked the Maryland State Police to investigate the incident. The investigation uncovered no impropriety on Plaintiff's part.

In the other instance, on October 9, 2009, Police Corporal Stephen Bachert was involved in an incident in which he allegedly used excessive force at a local mall. The Department undertook an internal investigation of the incident. Plaintiff learned of the incident. Although Plaintiff was not assigned to the internal investigation, he persuaded a mall security officer to give him a copy of the video.

In the following month, after interviewing the mall security officer who provided Plaintiff with the video, the Department notified Plaintiff that it was investigating him. The investigation was based on allegations that Plaintiff interfered with an official police investigation and behaved in a manner unbecoming of a Hyattsville police officer. Defendant admitted during subsequent interviews that he watched the video at the mall and later obtained a copy of it.

On March 5, 2010, Chief Holland suspended Plaintiff will full pay on an emergency basis. Allegedly, Chief Holland so acted pursuant to a Maryland statute that authorizes chiefs of police to impose emergency suspension "if it appears that the action is in the best interest of the public and the law enforcement agency." Md. Code Ann., Pub. Safety § 3-112 (b).

Sergeant Purvis, the investigating officer, completed the investigation approximately one week later. Sgt. Purvis recommended that thirty-two administrative charges be lodged against Defendant.

In the fall of 2009, Plaintiff and a few other African-American officers contacted the NAACP to complain about discrimination they had allegedly witnessed and experienced at the Department. In January 2010, Henry Hailstock, president of the Montgomery County division of the NAACP, filed a complaint of racial and sex discrimination with the DOJ based upon the information received from Plaintiff and the other officers.

On February 26, 2010, the DOJ notified the Hyattsville city attorney that it had initiated an investigation into whether the City had discriminated against Hyattsville police officers. Approximately seven months later, after an investigation, the DOJ decided to close the matter without further action.

In mid-March 2010, Chief Holland reduced the number of administrative charges against Plaintiff from thirty-two to twenty. Plaintiff received official notification from the Department of the charges and exercised his right to an administrative hearing. The hearing was scheduled for late April 2010. However, with the assistance of counsel, Plaintiff accepted a settlement agreement and resigned before the hearing took place.

At the close of discovery, Defendants filed a Motion for Summary Judgment. Doc. No. 22. Although Defendants' Motion for Summary Judgment is a lengthy document, the crux of Defendants' argument is that, because he voluntarily resigned from the Department, Plaintiff cannot show that Defendants took adverse action against him. Defendants also stress that all of the challenged investigations had a reasonable basis in fact.

On May 17, 2012, Plaintiff filed a Cross-Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Summary Judgment (Cross-Motion for Summary Judgment). Doc. No. 23. The Parties have responded and replied to the respective motions and the matter is ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists.

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III.   LEGAL ANALYSIS

### A.   Defendants' Motion for Summary Judgment

#### 1.   *Title VII*

##### a.   Failure to Exhaust

Defendants argue that Plaintiff failed to exhaust administrative remedies inasmuch as he bases his claims on acts that took place more than three hundred days before he filed his charge of discrimination. As Plaintiff filed his charge of discrimination on July 12, 2010, as a general matter, Plaintiff cannot rely on acts that occurred before September 15, 2009. *See Lewis v. MV Transp., Inc.*, Civil Action No. 8:12–cv–00983–AW, 2012 WL 4518541, at *3–4 (D. Md. Sep. 28, 2012).

b.      Racial Discrimination

i.      Prima Facie Case

To make out a prima facie case of racial discrimination under the pretext framework, the plaintiff must show that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (1999)).

In this case, there is no dispute whether Plaintiff, as an African American, belongs to protected class. Furthermore, assuming the existence of adverse employment action, Defendants do not seriously argue that Plaintiff failed to perform his job duties at a level that met his employer's legitimate expectations. Nor do Defendants argue that Plaintiff's position did not remain open or was not filled by a similarly qualified applicant outside of the protected class. Therefore, the Court's analysis centers on whether Plaintiff has created a triable issue on the issue of adverse employment action.

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). "Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment." *Id.* (quoting *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 737 n.6 (D. Md. 2009)).

Although an investigation of an employee may constitute an adverse employment action in certain circumstances, disciplinary investigations "reasonably rooted in articulable facts justifying such an investigation" typically do not rise to the level of adverse employment actions. *See Settle v. Balt. Cnty.*, 34 F. Supp. 2d 969, 992 (D. Md. 1999); *see also Jenkins v. Balt. City Fire Dep't*, 862 F. Supp. 2d 427, 445–46 (D. Md. 2012) (citing cases). Consistent with these authorities, several Circuits, including the Fourth, have come to the conclusion that the suspension of a police officer with pay pending the outcome of an internal investigation reasonably rooted in articulable facts does not constitute adverse employment action. *Cf. Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *cf. also Nichols v. S. Ill. Univ.- Edwardsville*, 510 F.3d 772, 786–87 (7th Cir. 2007) (citing cases); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006).

In this case, a reasonable juror could only conclude that the two investigations of which Plaintiff complains were reasonably rooted in articulable facts. As for the investigation surrounding the mall incident, Plaintiff does not dispute that he approached the mall security officer and persuaded him to show—and later give—him the videotape despite the Department's internal investigation into the incident. Furthermore, the record is replete with other articulable facts justifying the inference that Chief Holland and the Department acted reasonably in concluding that Plaintiff might have behaved improperly in connection with the mall incident (e.g., witness intimidation). *See, e.g.*, Doc. No. 22-21 at 6. Additionally, it is undisputed that Chief Holland sustained twenty of the administrative charges against Plaintiff and that the dispute was scheduled for an administrative hearing that Plaintiff voluntarily chose not to attend.

Likewise, a reasonable juror could only conclude that Defendants' investigation into the allegations of cheating was reasonably rooted in articulable facts. Although the Maryland State Police's investigation uncovered no wrongdoing on Plaintiff's part, Plaintiff does not dispute that Chief Holland received an internal memo from several sergeants reporting allegations that an officer, Barbara Smith, might have received unauthorized access to Plaintiff's copy of the model answers to the exam questions. It is also uncontroverted that one of the co-authors of the internal memo, Sergeant S. Johnson, sat on the board that evaluated the officers' exam responses. The memo reports that Officer Smith knew the answer to every question asked during the exam and that she answered almost verbatim two "scenarios questions." Doc. No. 25-2 at 17. The memo further reports that Officer Smith's exam score far exceeded that of the other candidates. Additionally, Plaintiff does not argue, and the record does not reflect, that Defendants suspended him or took similar action in conjunction with the investigation into the cheating allegations. Therefore, although Plaintiff was cleared of this accusation, this does not compromise the fact that Defendants' investigation was reasonably rooted in specific, articulable facts.

Plaintiff also seems to argue that the sergeants' memo, the other allegations it contains, or both, constitutes adverse employment action. However, as noted above, Plaintiff cannot rely on acts that occurred before September 15, 2009. The memo is dated March 6, 2009, and the allegations it contains are, to be sure, from an earlier time. Moreover, the memo was written by a group of sergeants, not Defendants. Furthermore, the record indicates that, of all the allegations in the memo, the cheating allegation is the only one for which Defendants seriously investigated Plaintiff. Therefore, the memo and the allegations it embodies fail to constitute adverse employment action.

Alternatively, Plaintiff argues that Defendants constructively discharged him. That is, Plaintiff argues that the alleged discrimination he faced in the Department grew so intolerable that he was forced to resign. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 783 (D. Md. 2010) (citation and internal quotation marks omitted). "A plaintiff must prove (1) deliberateness of the employer's action and (2) intolerability of the working conditions." *Id.* (citation and internal quotation marks omitted). "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Id.* (brackets omitted) (citation and internal quotation marks omitted).

In this case, no reasonable juror could conclude that Defendants' constructively discharged Plaintiff. As for prong (1), the record contains no facts from which a reasonable juror could conclude that Defendants deliberately sought to make Plaintiff's working conditions intolerable. As explained above, the investigations and incidents of which Plaintiff complains, to the extent they are timely, were either reasonably rooted in articulable facts or simply not attributable to Defendants. As for prong (2), for similar reasons, the complained-of incidents do not rise to the "high standard" of intolerability. Here, at most, Plaintiff asserts that he was dissatisfied with Defendants' treatment of him in relation to the investigations and incidents discussed above. However, as this Court has held, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not intolerable as to compel a reasonable person to resign." *See id.* (citation and internal quotation marks omitted). It bears emphasis, moreover, that the record evidence supports the conclusion that Plaintiff, upon the advice of counsel, voluntarily resigned rather than participate in the

administrative hearing. Accordingly, no reasonable juror could conclude that Plaintiff was constructively discharged.

For the foregoing reasons, no reasonable juror could conclude that Plaintiff has made out a prima facie case for racial discrimination under Title VII. Therefore, Plaintiff's racial discrimination claim fails as a matter of law. Still, the Court will briefly address the second and third steps of the *McDonnell Douglas* burden-shifting framework.

ii.      Nondiscriminatory Reason and Pretext

Under the *McDonnell Douglas* framework, "[i]f a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). Here, assuming arguendo Plaintiff's suspension with pay constituted adverse employment action, Defendants proffer that they made this decision based on allegations of, inter alia, witness tampering and intimidation. Therefore, Defendants have articulated a nondiscriminatory reason for the allegedly adverse action.

Where the employer articulates a nondiscriminatory reason for the adverse employment action, "'the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.'" *Hill*, 354 F.3d at 285 (alterations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000)). "In other words, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves*, 530 U.S. at 143).

In this case, no reasonable juror could conclude that Plaintiff could prove by a preponderance of the evidence that Defendants' nondiscriminatory reason is a pretext for

discrimination. "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors." *Reeves*, 530 U.S. at 148. "Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . ." *Id.* at 148–49.

In this case, the strength of Plaintiff's prima facie case is nonexistent as no reasonable juror could conclude that he has made out one. Therefore, the probative value of Plaintiff's proof that Defendants' nondiscriminatory reason is false must be exceedingly high. *Cf. id.*

Plaintiff has failed in this regard. Plaintiff cobbles together a string of unrelated incidents in a bid to show that Defendants' nondiscriminatory reason is pretextual. The evidence basically falls into two categories: (1) statistical and (2) comparative. As for statistics, Plaintiff offers data purporting to show that African-American employees of the Department were disproportionately disciplined. As for comparative evidence, Plaintiff makes the following allegations, some of which constitute distortions of the record:

i.      Defendants allowed a subordinate officer to investigate Plaintiff.

ii.     Defendant hired two white officers that were previously dismissed from a police academy for cheating on examinations.

iii.    Defendants did not suspend an officer against whom two charges of sexual assault were sustained.

iv.     Defendants did not suspend an officer against whom two brutality complaints were filed.

v.      Defendants failed to investigate Plaintiff's complaint that a white officer engaged in inappropriate sexual behavior.

11

vi.     Defendants did not discipline an officer accused of slamming a girl's head on a police cruiser.

vii.    Defendants did not discipline an officer who faced two charges of police brutality.

viii.   A White Hispanic officer used the epithet "nigger" during a criminal investigation.

ix.     An officer tased someone while sitting in his vehicle and Defendants failed to investigate the incident.

Plaintiff's statistical evidence is unpersuasive. As Plaintiff himself acknowledges, although statistical evidence may be probative of discrimination, its usefulness depends on the surrounding facts and circumstances. *See* Doc. No. 23-2 (citations omitted). Plaintiff's statistical evidence is threadbare. Although it may support the inference that African-American officers were disciplined disproportionately, the statistics do not reveal the underlying facts and circumstances of these disciplinary incidents. Absent more specific information, the statistics could also support the inference that African-American officers were involved in more misconduct than White and Hispanic officers. Accordingly, Plaintiff's statistical evidence is unpersuasive.

Plaintiff's comparative evidence is also unconvincing. As for allegation (i), the probative value of being investigated by a subordinate officer is unclear. Allegation (ii) is inapposite because Plaintiff's theory of the case is not that Defendants refused to hire him because of prior allegations of cheating even though they hired White officers accused of the same. Rather, Plaintiff argues that Defendants investigated him based on allegations of cheating. Furthermore, Plaintiff seems to concede that the Department investigated the White officers accused of cheating and determined that they had adequately completed their academy training.

Next, Plaintiff alleges that Defendants did not suspend an officer against whom two charges of sexual assault were sustained. This allegation distorts the record evidence, which indicates that the Department suspended this officer and that he eventually resigned.

Allegations (iv) through (viii) share a common theme: Defendants failed to investigate, suspend, and/or discipline various officers who engaged in misconduct. However, these incidents are not probative of discrimination because their underlying circumstances are not comparable to the circumstances that gave rise to the complained-of investigations. Furthermore, Defendants argue, and Plaintiff does not appear to dispute, that none of the above incidents involved a command officer. Accordingly, Plaintiff's statistical and comparative evidence is insufficient for a reasonable juror to conclude by a preponderance of the evidence that Defendants' nondiscriminatory reason is pretextual.

The preceding analysis demonstrates two main propositions. One, no reasonable juror could conclude that Plaintiff has stated a prima facie case of racial discrimination. The second is that, even had Plaintiff made out a prima facie case, no reasonable juror could conclude that Defendants' nondiscriminatory reason is a pretext. Accordingly, the Court enters summary judgment in favor of Defendants on Plaintiff's Title VII racial discrimination claim.

c.      Hostile Work Environment

Plaintiff asserts a hostile work environment claim that he bases on the same facts as his racial discrimination claim. In order to make out a hostile work environment claim based on race, a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of his race, (3) was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (4) was imputable to his employer. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (citation omitted).

Here, for the reasons stated above, no reasonable juror could conclude that the alleged harassment of which Plaintiff complains was because of his race. Rather, it was reasonably rooted in articulable facts regarding allegations of cheating and witness intimidation and tampering. Furthermore, as illustrated, Plaintiff's statistical and comparative evidence is weak and does not support a reasonable inference of racial animus.

Additionally, no reasonable juror could conclude that the challenged conduct was sufficiently severe or pervasive to sustain a hostile work environment claim. Plaintiff predicates his claim on mainly three independent incidents (the internal memo, the cheating investigation, and the witness tampering investigation), none of which is severe. To reiterate, the latter two incidents were reasonably rooted in articulable facts and the former incident, to the extent Plaintiff can rely on it, was arguably not caused by Defendants. Accordingly, no reasonable juror could find in favor of Plaintiff on his hostile work environment claim.

       d.     Retaliation

Plaintiff argues that Defendants retaliated against him due to his complaint to the NAACP about discrimination and the ensuing DOJ investigation.

"A plaintiff lacking direct evidence of retaliation may utilize the *McDonnell Douglas* . . . framework to prove a claim of retaliation." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). "In the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate non-retaliatory reason for the action." *Id.* "If the employer sets forth a legitimate, non-retaliatory explanation for the action, the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail." *Id.*

"To establish his prima facie case of retaliation, [Plaintiff] must show that he engaged in

protected activity, that [Defendants] took adverse action against him, and that a causal relationship existed between the protected activity and the adverse employment activity." *Id.* (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)).

In this case, construing the evidence in the most favorable light, a reasonable juror could conclude that Plaintiff has stated a prima facie case of retaliation. As for prong (1), a reasonable juror could conclude that Plaintiff's complaint of discrimination constitutes protected activity. The record contains evidence indicating that Plaintiff filed a complaint of discrimination with the NAACP in January 2010 and that the DOJ notified the Department of its investigation of this complaint on February 26, 2010. Although Plaintiff does not clearly state that Defendants were aware that he was one of the employees who complained to the DOJ, a reasonable juror could so conclude on the basis of all the evidence. Therefore, a reasonable juror could conclude that Plaintiff has satisfied prong (1) of the prima facie case for retaliation.

A reasonable juror could also conclude that Plaintiff has satisfied prong (2) of the prima facie case for retaliation. Under prong (2), the question is whether the action of which a plaintiff complains is materially adverse. *Burlington*, 548 U.S. at 68. An action is materially adverse where it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citation and internal quotation marks omitted).

In this case, construing the evidence in Plaintiff's favor, a reasonable juror could conclude that the suspension with pay would dissuade a reasonable person in Plaintiff's position from making or supporting a charge of discrimination. Although Plaintiff received his pay during the suspension, it is undisputed that he was no longer allowed to identify as a member of the Department, which included the taking of his firearm and police badge. The evidence also

indicates that Plaintiff, as a lieutenant, was a member of the Department's command staff and that he received positive performance reviews throughout his tenure. A reasonable person might well be dissuaded from filing a charge of discrimination due to, for instance, the loss of prestige, privileges, and respect that may accompany a suspension. This concern figures to be especially sensitive where, as here, the employee is a commanding officer who, inferably, boasts a strong track record of performance. Although the record evidence does not compel such conclusions, it is nevertheless amenable to them.

The Court is aware that it held above that a suspension with pay is generally not an adverse action within the meaning of Title VII's racial discrimination prohibition. However, as this Court has explained before, adversity for the purposes of Title VII's racial discrimination proscription represents a higher standard than adversity within the meaning of Title VII's retaliation provision. *Westmoreland v. Prince George's Cnty., Md.*, Civil Action No. 09–CV–2453 AW, 2012 WL 2446154, at *7, 15 (D. Md. June 26, 2012). Therefore, in some cases, one would expect for an action that is materially adverse within the meaning of section 704(a) to lack material adversity for section 703(a) purposes. Thus, a reasonable juror could conclude that the suspension with pay is materially adverse.

As for prong (3), a reasonable juror could conclude that Plaintiff's suspension is causally linked to his discrimination complaint due to the temporal proximity between the DOJ's notification of the Department of its investigation and Plaintiff's suspension (Feb. 26, 2010 and March 5, 2010, respectively). The Supreme Court has indicated that "mere temporal proximity" may suffice to establish the necessary causal link where, as here, it is "very close." *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Therefore, Plaintiff has stated a prima facie case of causation.

Plaintiff's proffered nondiscriminatory reason for suspending Plaintiff is his conduct in the mall incident (i.e., witness tampering and intimidation). Therefore, the question is whether a reasonable juror could conclude that this nondiscriminatory reason is a pretext for retaliation. Viewing the evidence in the most favorable light, a reasonable juror could so conclude. Defendants started to investigate Plaintiff for his conduct during the mall incident on or around October 22, 2009. Doc. No. 22-16. Defendants suspended Plaintiff on March 5, 2010. Therefore, Defendants investigated Plaintiff for approximately 4.5 months without suspending him. Then, shortly after learning about Plaintiff's discrimination complaint, Defendants suspended Plaintiff even though Chief Holland did not receive Sgt. Purvis's preliminary report until March 12, 2010 (or, in other words,  after the date of suspension). Construing this evidence in Plaintiff's favor, a reasonable juror could conclude that Defendants' real reason for suspending Plaintiff was his complaint of discrimination, not his conduct in the mall incident.

The Court realizes that it held above that no reasonable juror could conclude that the same nondiscriminatory reason was a pretext for unlawful racial discrimination. The instant question, however, is not whether the nondiscriminatory reason is a pretext for racial discrimination, but rather, whether it is a pretext for retaliation. The facts underlying these claims differ and the legal principles governing retaliation claims are generally less stringent than those governing Title VII racial discrimination claims. Therefore, a reasonable juror could conclude that Defendants' nondiscriminatory reason is pretextual.

For these reasons, the Court denies Defendants' Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim.[1] [2]

2.      *§ 1983 First Amendment*

A plaintiff must establish three elements to prove a First Amendment retaliation claim under § 1983. *See Suarez Corp. Inds. v. McGraw*, 202 F.3d 676, 685–86 (2000). "First, the plaintiff must demonstrate that his or her speech was protected." *Id.* at 686 (citation omitted). Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech." *Id.* (citation omitted). Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Id.* (citation omitted).

In this case, construing the evidence in the most favorable light, a reasonable juror could conclude that Plaintiff can establish the three elements of a § 1983 First Amendment claim. Defendants concede that Plaintiff's complaints to the NAACP and DOJ about discrimination at the Department constitute protected activity. Therefore, the Court limits its analysis two elements (2) and (3).

As to the second element, a reasonable juror could conclude that the suspension adversely affected the Plaintiff's constitutionally protected speech. To support this conclusion, the Court incorporates by reference its analysis of Plaintiff's Title VII retaliation claim. Simply put, a juror

---

[1]  It is unclear whether Plaintiff has asserted his Title VII racial discrimination and retaliation claims under, respectively, § 1983 and § 1981. To the extent he has, the outcome would remain the same as the legal standards governing Title VII claims apply to racial discrimination and retaliation claims under, respectively, § 1983 and § 1981. *See Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 880 (D. Md. 2012) (citations omitted).
[2] Plaintiff asserted his Title VII claims against Defendants Murphy and Holland in addition to the City. Defendants Murphy and Holland are not proper parties to a Title VII suit and, therefore, the Court dismisses Plaintiff's Title VII retaliation claims against them.

could conclude that a reasonable person in Plaintiff's shoes would feel compulsion not to speak out on matters of public concern if he or she knew that such activity would result in a suspension of the type at issue.

A reasonable juror could also conclude that there is a causal relationship between Plaintiff's protected speech and the suspension. Again, the Court incorporates by reference its analysis of Plaintiff's retaliation claim. The temporal proximity between the suspension and the DOJ's notification of Defendants that it was investigating Plaintiff's complaint is barely over a week. Furthermore, Defendants had been investigating Plaintiff for approximately 4.5 months before suspending him, which arguably undercuts the inference that the investigation caused it to suspend Plaintiff. Indeed, as noted above, Chief Holland received the completed version of the initial investigation after suspending Plaintiff. Thus, in light of the preceding considerations, a reasonable juror could conclude that Defendants retaliated against Plaintiff for speaking out about a matter of public concern.[3]

### 3.    *Wrongful Discharge*

Plaintiff's wrongful discharge claim fails as a matter of law. "In order to establish wrongful discharge, the employee must prove by a preponderance of the evidence, that (1) [he] was discharged; (2) [his] discharge violated a clear mandate of public policy; and, (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee." *King v. Marriott Int'l Inc.*, 866 A.2d 895, 901 (Md. Ct. Spec. App. 2005) (citation omitted). "[T]he public policy in question must be a preexisting, unambiguous, and particularized pronouncement,

---

[3] In addition to the City, Plaintiff sued Chief Holland and Defendant Murphy in both an individual and official capacity. Defendants do not address whether there is a proper basis for municipal liability on this claim. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Nor do Defendants appear to address whether there is a basis for personal liability on this claim as to Murphy.

by constitution, enactment, or prior judicial decision . . . ." *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002). However, "[a]busive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 (Md. 1989). Thus, under Maryland law, plaintiffs cannot predicate a claim for wrongful discharge on a violation of Title VII. *See id.* at 190.

In this case, Plaintiff piggybacks his wrongful discharge claim onto his Title VII claims by relying on identical allegations to substantiate both. Therefore, a civil remedy exists to vindicate Plaintiff's grievances. Indeed, the Court held above that a reasonable juror could rule in Plaintiff's favor on his retaliation claim. Furthermore, even if the racial discrimination claim were actionable as a wrongful discharge claim, it would fail because no reasonable juror could conclude that Defendants suspended Plaintiff on account of his race. Accordingly, Plaintiff's wrongful discharge claim fails as a matter of law.

4.      *State Law Racial Discrimination Claim*

Plaintiff asserts a racial discrimination claim under Maryland law. Plaintiff's state law racial discrimination claim duplicates his Title VII racial discrimination claim and fails for the same reasons. *See Taylor v. Giant of Md.*, LLC, 33 A.3d 445, 459 (Md. 2011) (citation omitted); *Chappell v. S.  Md. Hosp., Inc.*, 578 A.2d 766, 772 (Md. 1990). Indeed, the Parties agree that Plaintiff's state law racial discrimination claim "would be decided under the standards of Title VII." Doc. No. 23-2 at 27. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's state law discrimination claim.

**B.      Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff's only viable claims are his Title VII retaliation claim and his § 1983 First Amendment claim. As these claims present genuine factual disputes, Plaintiff is not entitled to summary judgment on them. Therefore, the Court denies Plaintiff's Cross-Motion for Summary Judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment. A separate Order follows.

| | |
|---|---|
| November 14, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |